# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DENNIS TAYLOR, et al., | ) |
| | ) |
| PLAINTIFFS, | ) Case No. 4:14-Civil-00293-JED-TLW |
| v. | ) |
| | ) |
| MICHELIN NORTH AMERICA, INC., et al., | ) |
| | ) |
| DEFENDANTS. | ) |

## DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION FOR *LONE PINE* CASE MANAGEMENT ORDER

Defendants Michelin North America, Inc. ("Michelin") and Goodrich Corporation ("Goodrich"; collectively, "Defendants"), for their Reply Memorandum in Support of Their Motion for a *Lone Pine* Case Management Order, state as follows.

## INTRODUCTION

Defendants have moved this Court to enter a *Lone Pine* case management order, which will require each Plaintiff to produce basic, *prima facie* evidence in advance of wholesale discovery. The critical underpinning of Defendants' motion is that the public record unambiguously demonstrates that the relevant groundwater plume is clearly defined, and the majority of Plaintiffs' properties have no contact with the groundwater plume. Indeed, Plaintiffs have admitted as much. In response, Plaintiffs contend they may recover "stigma damages" absent any impact to their properties. Yet Oklahoma – in line with the majority rule – flatly prohibits such stigma damages. Plaintiffs' admission amplifies the substantial doubt that they can demonstrate any basic showing, justifying the need for such a case management order.

## ARGUMENT

This case is a prime candidate for a *Lone Pine* order, because the public record unequivocally demonstrates the groundwater plume is limited and has no contact with many Plaintiffs' properties. Plaintiffs may not recover stigma damages absent actual impact.

## I. The Parties Agree That Many Plaintiffs Cannot Meet a Basic, *Prima Facie* Burden.

Plaintiffs' Response in Opposition ("Opposition") leads with their express concession that it is "undisputed that some of the Plaintiffs' properties are not contaminated". (ECF Doc. 44, at 1.) Consistent with their admission, Plaintiffs suggest no documents that could support a basic, *prima facie* showing.[1] To the contrary, Plaintiffs urge this Court that "there is no need for a *prima facie* showing of contamination or needless testing and results." (*Id.*) Plaintiffs offer no legal authority in support of this baseless argument. To the contrary, stigma damages are flatly prohibited absent actual impact, as set forth in Section II. Because the groundwater plume is clearly delineated, a *Lone Pine* order is necessary to prevent plaintiffs from converting a small groundwater plume into an unsubstantiated city-wide tort claim.

## II. Each Plaintiff Must Ultimately Demonstrate Actual Impact To His Or Her Property, and "Stigma Damages" Under a Nuisance Theory Are Not Recoverable.

Plaintiffs' chief theory in opposition to entry of a *Lone Pine* order is that they may recover damages even if they cannot ultimately demonstrate any impact to each of their properties. Plaintiffs urge this Court that the need for a *Lone Pine* order is thus obviated, because they must not prove actual impact and that each of them may recover damages from Defendants simply by living in a contaminated area. Plaintiffs are incorrect.

---

[1] Plaintiffs describe other documents that they claim are not a part of the public record, but they do not argue that these documents would support any basic, *prima facie* showing. (See Opposition, ECF Doc. 44, at 12-13.) Defendants are aware of no documents that are not publicly available that would tend to support a *prima facie* showing. This is because, first, the public record evidences the nature, extent, and location of the groundwater plume. (See Declaration of Ronald Frehner, P.E. at ¶ 13, attached as Ex. A.) There may be historic facility records that are not a part of the public record, but there is no reason to believe such documents evidence the nature, extent, and location of the groundwater plume. If such documents exist, Defendants will produce them or make them available for review. These historic documents have no bearing on the threshold question of whether each Plaintiff can meet the basic, initial burden.

### A. Damages Absent Actual Impact, Known As Stigma Damages, Are Unequivocally Not Recoverable In Oklahoma.

Oklahoma district courts have already resolved this issue. Indeed, in March 2014, the McCormick court squarely determined that stigma damages are not recoverable under Oklahoma law absent actual impact. McCormick v. Halliburton Co., 2014 WL 1328352, at *1 (W.D. Okla. Mar. 31, 2014). In McCormick, plaintiffs alleged a groundwater plume consisting of ammonium perchlorate had polluted the soils and subsurface of defendant's industrial site and had migrated off-site into an adjacent residential neighborhood. The McCormick plaintiffs requested the certification of two classes: first, the "Plume Class" consisting of owners whose properties were located on the groundwater plume, and, second, the "Threatened Class" whose properties were not contaminated but had diminished property value due to their proximity to the groundwater plume. Defendant moved for judgment on the pleadings only as to the Threatened Class's claims, on the basis the Threatened Class stated no cognizable claim. The court granted the motion. Id. at *5. In awarding judgment for defendant, the court evaluated the pleading requirement for nuisance when there is allegation of contamination of plaintiff's property. Id. The court surveyed state Supreme Court decisions from other jurisdictions, including Michigan and Kansas, and it concluded that "the Oklahoma Supreme Court would follow the overwhelming majority of jurisdictions, . . . and would find that a plaintiff cannot maintain a nuisance claim based solely on the claim that the plaintiff's property value has diminished because of marketplace fear or stigma." Id. The McCormick court identified several compelling policy reasons; including the fact that such damages are "conjectural" and that such damages would improperly divert a defendant's resources from compensating persons who are in fact impacted. See Id. (discussing Adkins v. Thomas Solvent Co., 487 N.W.2d 715, 725 (Mich. 1992); Smith v. Kan. Gas Serv. Co., 169 P.3d 1052 (Kan. 2007) (collecting cases)).

3

McCormick unequivocally refutes Plaintiffs' argument that they may recover absent actual impact. Here, the majority of Plaintiffs' claims – even as Plaintiffs have conceded – are wholly based on their properties' alleged loss of value given the alleged proximity to contamination. (See Plaintiffs' Response in Opposition ("Opposition"), ECF Doc. 44, at 1.) Plaintiffs moreover include no allegation that their properties are otherwise impacted, such as with foul odor, loud noises, or actual encroachment. Yet in an unsubstantiated run-around, Plaintiffs argue "Defendants have not offered prima facie proof that there are no stigma damages nor diminution in value . . . much less offered any case law that limits recovery to only those parcels of real estate with direct, physical contamination." (Opposition, ECF Doc. 44, at 5.) First, Defendants have no burden to show that plaintiffs have no damages, because it is Plaintiffs' burden to prove their damages. And, in any event, McCormick prohibits such stigma damages as a matter of law. Second, Plaintiffs' Opposition is incurably devoid of a single legal authority supporting the award of stigma damages in the absence of actual impact. Instead, and as a grossly inadequate substitute for legal authority, Plaintiffs attached to their Opposition the affidavit of a real estate appraiser (Exhibit 1, ECF Doc. 44-1) and an article in a 2004 appraisal journal (Exhibit 2, ECF Doc. 44-2). These documents do little more than reflect the substantial uncertainty shrouding stigma damages when there is no actual impact.[2] In short, Plaintiffs' admission that many of them cannot show actual impact is telling. It is particularly telling when combined with Plaintiffs' request for medical monitoring damages in light of their concession

---

[2] For example, the appraisal journal article suggests that "[a]side from stigma there are numerous conditions that influence value from one place to another", and it catalogues the myriad conditions impacting a property's current perceived value, such as crime rate, infrastructure, and quality of existing developments. (See Plaintiffs' Exhibit 2, ECF Doc. 44-2, at 3.)

4

they have no present physical injury or impact.[3]  Plaintiffs' claims, read together, represent an unfounded drain on judicial and party resources.[4]  This favors entry of a *Lone Pine* order.

> **B.  Even the Authority on Which Plaintiffs Rely Requires Actual Impact to Each Plaintiff's Property as a Condition for the Recovery of Damages.**

Plaintiffs' numerous nuisance and diminution in value cases **all involved actual impact to the plaintiff's property**.  Their public nuisance claim does not save their claim for damages.  This is because Oklahoma is clear that "public nuisance" is not a catch-all and does not create city-wide tort claims absent actual impact.  E.g., McCormick v. Halliburton Co., 2014 WL 1328352, at *5 (evaluating "public nuisance" under Oklahoma law and determining no claim exists if a plaintiff cannot demonstrate actual impact); McKay v. City of Enid, 1910 OK 143, 26 Okla. 275 (dismissing public nuisance claim, because "plaintiff's petition fails to show that he has suffered any special injury from the public nuisance charged in his petition for which he can recover from those guilty of maintaining it . . . .").

Plaintiffs' misguided theory that there is no "touching" requirement for nuisance is disingenuous, because Plaintiffs' authority decidedly demonstrates that Oklahoma courts require actual injury in order to recover for nuisance or to recover damages for a diminution in value: Schlegel v. Kinzie, 1932 OK 243 (defendants enjoined to bury pipe lines maintained on plaintiff's property); Meinders v. Johnson, 2006 OK CIV APP 35 (operators of mineral estate

---

[3] Currently pending before this Court is Defendants' Motion to Dismiss Plaintiffs' Medical Monitoring Claims (ECF Doc. 34), which is fully briefed.  Defendants have requested this Court to dismiss Plaintiffs' medical monitoring claims on the basis Plaintiffs have alleged no present physical injury or disease as required by Oklahoma law to recover medical monitoring damages.

[4] Plaintiffs' suggestion that the stigma damages plaintiffs' claims should be remanded due the amount in controversy is a red herring, particularly in light of the fact there has been no challenge as to jurisdiction.  (See Opposition, ECF Doc. 44, at 6.)  As demonstrated in the removal documents (ECF Doc. 1), each Plaintiff has put more than $75,000 into controversy.  Moreover, the vast majority of Plaintiffs never filed suit in the state court, instead filing the First Amended Petition with this Court.

maintained a public nuisance by operating wells and abandoning equipment on plaintiff's property); McPherson v. First Presbyterian Church of Woodward, 1926 OK 214 Okla. 40 (proposed gas station created nuisance by being "distinctly audible" on plaintiffs' property); Peevyhouse v. Garland Coal & Min. Co., 1962 OK 267 (plaintiff's property lost value due to defendant's failure to remediate plaintiff's property following defendant's coal mine operations); Malnar v. Whitfield, 1989 OK CIV APP 28 (affirming damages for defendant, whose property lost value due to plaintiffs' inadvertent construction encroachment on defendant's property). Other of Plaintiffs' cases in fact recognize the inherent limits of a nuisance claim, concluding no nuisance existed where plaintiff's property would not be impacted. E.g., Simons v. Fahnestock, 1938 OK 264 (denying injunction to prevent defendants from constructing a barn, because ponies not a nuisance). Lastly, the Oklahoma Environmental Quality Code creates no private cause of action for nuisance. See 271A Okla. Stat. 2-6-102; 27A Okla. Stat. 2-6-105.

### III. A *Lone Pine* Order is Entirely Warranted In a Case Like This.

This case, with the substantial and admitted deficiencies that underpin Plaintiffs' claims, is an ideal candidate for a *Lone Pine* order. First, the issues surrounding causation and damages are complex matters requiring substantial expert opinion. Second, the sizeable number of plaintiffs – 53 in total – who do not seek to certify a class will result in unnecessarily protracted litigation. And, lastly, given the apparent deficiencies in Plaintiffs' claims, the non-meritorious Plaintiffs will consume the resources of this Court and Defendants to the prejudice of the Plaintiffs who can make a basic *prima facie* showing. The order is warranted.

### A. *Lone Pine* Orders Are Commonly Entered Under These Circumstances.

In their Opposition, Plaintiffs exert little effort to distinguish the extensive on-point authority upon which Defendants relied in support of the motion. Indeed, Defendants cited

approximately 19 cases in which courts entered and/or affirmed entry of a *Lone Pine* order. Yet Plaintiffs cherry-picked only three of those cases to point out that those three cases either involved more than 1,000 plaintiffs or involved Ecuadorian provinces. (Opposition, ECF Doc. 44, at 10.) Plaintiffs' cherry-picked distinctions are telling, because this evidences the broad circumstances under which courts have entered (and affirmed) *Lone Pine* orders.

Courts use *Lone Pine* orders early in complex environmental tort cases to impose upon plaintiffs the initial burden of showing that there is some basic evidence to support the essential elements of their claims. E.g., In re Love Canal Actions, 547 N.Y.S.2d 174, 177-79 (Sup. Ct. 1989) (each plaintiff required to provide evidence of exposure, injury, and causation before defendants were forced to continue to devote substantial resources in defending the case); see also Pinares v. United Technologies Corp., 2011 WL 240512 (S.D. Fla. Jan. 19, 2011) (entering a *Lone Pine* order in an environmental contamination suit involving only two plaintiffs and no putative class: "although this case may appear simple, it will require as much effort as its companion"); Schelske v. Creative Nail Design, Inc., 933 P.2d 799, 801 (Mont. 1997) (entering a *Lone Pine* order in a case that involved two plaintiffs and no putative class).

Remarkably similar to this case, other courts have entered *Lone Pine* orders after "a state or federal agency has issued a report that either provides much of the information called for in the order or undercuts the plaintiffs' claims for personal injuries." McManaway v. KBR, Inc., 265 F.R.D. 384, 385 (S.D. Ind. 2009) (citation and quotation marks omitted). In McManaway, for example, defendants submitted an agency report indicating that many of plaintiffs' blood tests did not detect the relevant chemical at a significant level. *Id.* The district court entered a *Lone Pine* order to "promote efficiency in the resolution of the case" because the report calling

7

into question plaintiffs' abilities to establish a *prima facie* case. Courts regularly enter *Lone Pine* orders to manage complex environmental litigation efficiently.

**B. Plaintiffs' Authority in Inapposite.**

In contrast, the cases upon which Plaintiffs rely are wholly inapplicable to the facts and circumstances presented by Plaintiffs' claims. Much of Plaintiffs' authority involved a single plaintiff or single family whose claims related to defendants' oil and gas exploration activities on or near plaintiffs' property. Roth v. Cabot Oil & Gas Corp., 287 F.R.D. 293 (M.D. Pa. 2012); Hagy v. Equitable Prod. Co., 2012 WL 713778 (S.D. W. Va. 2012). Because those actions involved a single plaintiff or family, the scope of the litigation was clearly defined at the outset. And, neither Roth nor Hagy involved the same questions as to causation as in the present case, because the exploration activities were recent, plaintiffs alleged contractual relationships with defendants, and there was no question as to plaintiffs' ability to establish a *prima facie* case.

Plaintiffs also rely on cases that could be appropriately managed through bellwether litigation or that involved multi-district litigation – devices that are not at issue in this litigation. For example, in Morgan v. Ford Motor Co., the court found that consolidated litigation involving 700 plaintiffs was better managed through use of bellwether plaintiffs with phased discovery. 2007 WL 1456154 (D. N.J. 2007); see also In re Digitek Prod. Liability Litig., 264 F.R.D. 249 (S.D. W. Va. 2010) (multi-district litigation against pharmaceutical manufacturers). Moreover, the Morgan and Digitek courts explained that they did not have concerns with regard to plaintiffs' ability to support their claims. Morgan, at *8-9; see also Digitek, 264 F.R.D. at 258-59 (discussing procedural mechanisms the court had already instituted, such as requiring each plaintiff fill out a fact sheet and authorize the release of medical records).

Plaintiffs' remaining authority is wholly inapplicable to their action for other reasons.

E.g., Kirsch v. Delta Dental of New Jersey, Inc., 2008 WL 441860 (D.N.J. Feb. 14, 2008) (class action against a single defendant insurance company, alleging defendant engaged in improper claims handling practices); Ramirez v. E.I. Dupont De Nemours & Co., 2010 WL 144866 (M.D. Fla. Jan. 8, 2010) (single plaintiff sued single defendant in products liability action). Similarly inapposite is the recent Strudley case. Strudley v. Antero Res. Corp., 2013 COA 106, cert. granted, 2014 WL 1357327 (Colo. Apr. 7, 2014). Strudley held that *Lone Pine* orders were not within a Colorado state court's case management discretion under the Colorado Rules of Civil Procedure and that "[h]ad the [Colorado] supreme court intended to adopt a standard similar to that in the federal rules, it could have done so by patterning [Colo. R. Civ. P] 16 after the federal rule[.]" Id. at 23. Strudley is moreover distinguishable on its facts, as it involved only one parcel of land, and it was not a putative class action. Id. at 24.

One case on which Plaintiffs rely in fact highlights this Court's inherent authority to exercise considerable discretion in managing the flow and efficiency of litigation, Renaud v. Martin Marietta Corp., 749 F. Supp. 1545, 1547 (D. Colo. 1990) aff'd sub nom. Renaud v. Martin Marietta Corp., 972 F.2d 304 (10th Cir. 1992). Renaud involved no request for a *Lone Pine* order, but the court did grant summary judgment for defendants following the court's unique and "efficient procedure" that employed a series of summary judgment proceedings on plaintiffs' *prima facie* evidence as a condition to representative plaintiffs' test trials.[5]

---

[5] In further support of their argument that they are deprived an opportunity to engage in discovery, Plaintiffs cite four Third Circuit opinions for the proposition that summary judgment may not be entered prior to discovery. (ECF Doc. 44, at 12-14.) None of these cases are in the context of a *Lone Pine* motion and are inapposite. A Lone Pine order only requires plaintiffs to show some basic evidence of impact, which is part and parcel of having a good faith basis for bringing suit. Here, a lone pine order is needed because plaintiffs have conceded many of their properties are not contaminated, as reflected by the public record. All Plaintiffs who make this basic showing will be entitled to full discovery.

9

### C. Plaintiffs Incorrectly Argue That A *Lone Pine* Order Is Unconstitutional Under Oklahoma Law, Relying on Inapplicable Legislative "Special Laws".

As a last ditch effort, Plaintiffs argue that entry of a *Lone Pine* case management order is unconstitutional under Oklahoma law. (See Opposition, ECF Doc. 44, at 1-2; 6-7.) In support of this theory, Plaintiffs rely on Zeier v. Zimmer, Inc., 2006 OK 98 and Wall v. Marouk, 2013 OK 36. Plaintiffs' argument – and these cases– could not be less relevant to this action. Those cases held an Oklahoma statute requiring an affidavit for medical malpractice actions was unconstitutional because the statute did not apply to negligence cases generally. The court's analysis was limited, because "only issue to be resolved is whether a statute upon a subject enumerated in the constitutional provision targets for different treatment less than an entire class of similarly situated persons or things." Zeier, 2006 OK at ¶ 13. Here, there is neither statute nor "special law", and the Court has inherent authority to enter a *Lone Pine* case management order. In any event, the constitutionality of a *Lone Pine* order under Oklahoma law is not relevant given it is procedural and not substantive. See generally Erie R. Co. v. Tompkins, 304 U.S. 64 (1938).

In sum, Plaintiffs have conceded the substantive deficiencies of their claim and have provided no legal authority supporting any award of stigma damages. In light of a record that strongly calls into question Plaintiffs' claims; Plaintiffs should be required to offer a basic, *prima facie* showing before this case progresses. Upon making this basic showing, full discovery shall proceed.

### CONCLUSION AND REQUEST FOR RELIEF

In light of the foregoing, the Court should enter a *Lone Pine* case management order that requires Plaintiffs first to produce some evidence to support the elements of their claims. In light

Plaintiffs' admissions and a public record indicating many cannot establish a *prima facie* claim, this basic showing is warranted before the parties engage in costly, time-consuming discovery.

Dated: January 26, 2015

Respectfully submitted,

By: /s/Connie M. Bryan
Connie M. Bryan, OBA #13664
MCCORMICK & BRYAN, PLLC
3500 S. Boulevard, Suite 10B
Edmond, OK 73013
Ph:   405.562-6800
Fx:    405.216-3602
Cell:  405-625-6395
cbryan@mccormickbryan.com

Peter W. Herzog (pro hac vice)
Christopher J. Schmidt (pro hac vice)
BRYAN CAVE LLP
211 North Broadway, Suite 3600
St. Louis, MO 63102
Ph:   (314) 259-2353
Fx:    (314) 552-8353
peter.herzog@bryancave.com
cjschmidt@bryancave.com

*Attorneys for Defendants*
*Michelin North America, Inc. and*
*Goodrich Corporation*

# CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of January, 2015, a true and correct copy of the foregoing was filed via this Court's electronic filing system, which will automatically send notifications to the following:

Benjamin L. Barnes, OBA# 16173
Benjamin L. Barnes, Attorney & Counselor at Law
Centennial Plaza
2575 Kelley Pointe Parkway, Ste. 100
Edmond, OK 73013
(405) 330-9860 – Telephone
(405) 231-4701 – Facsimile
bb@bbarneslaw.com

and

R. Christopher Cowan, OBA# 20129
Cowan Law Firm
2919 Commerce Street, Ste. 700
Dallas, TX 75226-1610
(214) 826-1900 – Telephone
(214) 826-8900 – Facsimile
chris@cowanlaw.net

and

Bradley H. Mallett, OBA# 15810
Taylor, Foster, Mallett, Downs, Ramsey & Russell
400 W. Fourth Street
P.O. Box 309
Claremore, OK 74018
(918) 343-4100 – Telephone
(918) 343-4900 – Facsimile
bmallett@soonerlaw.com

/s/Connie M. Bryan

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1. | DENNIS TAYLOR, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED; | ) ) ) ) |
| 2. | SEAN McDONALD, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED; | ) ) ) ) |
| 3. | TIKA McDONALD, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | ) Case No. 4:14-Civil-00293-JED-TLW ) ) ) |
| 4. | NIESHA FIELDS, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | ) ) **DECLARATION OF RONALD FREHNER, P.E.** |
| 5. | CATHY TAYLOR | ) |
| 6. | TOM ROBERTSON | ) |
| 7. | MARSHA ROBERTSON | ) |
| 8. | ROGER WEST | ) |
| 9. | MICHELLE WEST | ) |
| 10. | MICHAEL HESSEE | ) |
| 11. | KELSEY HESSEE | ) |
| 12. | JAMES HEYBURN | ) |
| 13. | CARRIE HEYBURN | ) |
| 14. | JOHN HAYBURN | ) |
| 15. | WANDA CAMP | ) |
| 16. | GARY CAMPBELL | ) |
| 17. | LEONA CAMPBELL | ) |
| 18. | DUSTY CULVER | ) |
| 19. | RICHARD GREEN | ) |
| 20. | MICHAEL E. HESSEE | ) |
| 21. | MARGARET MITCHELL | ) |
| 22. | JUDY INMAN | ) |
| 23. | LISA PEASE | ) |
| 24. | NANCY SHARBUTT | ) |
| 25. | TARA GOOD | ) |
| 26. | ROBIN WINFREY | ) |
| 27. | ROCKI WAHL | ) |
| 28. | VICKI CLARK | ) |
| 29. | ROBERT GREEN | ) |
| 30. | JAMES GRUBE | ) |
| 31. | LINDA GRUBE | ) |
| 32. | DANNY TRUJILIO | ) |
| 33. | LINDA TRUJILIO | ) |
| 34. | BOB OTT | ) |
| 35. | ROBERT PERRY | ) |
| 36. | BRENDA PERRY | ) |
| 37. | JODY RAFFETY | ) |
| 38. | DOUGLAS TURLEY | ) |

1

4486914.2

| | | |
|---|---|---|
| 39. | DEBRA TURLEY | ) |
| 40. | ANTHONY WOODS | ) |
| 41. | DEBRA WOODS | ) |
| 42. | ROBERT ESCOFFIER | ) |
| 43. | CAROL ESCOFFIER | ) |
| 44. | HOWARD CULVER | ) |
| 45. | JAMES HEYBURN | ) |
| 46. | CARRIE HEYBURN | ) |
| 47. | CAROL SMITH | ) |
| 48. | JACK WYATT | ) |
| 49. | NELLIE WYATT | ) |
| 50. | AMBER AIKWIG | ) |
| 51. | ANGELA BOND, | ) |
| 52. | CALVIN C. BRYANT, and | ) |
| 53. | THOMAS BOND | ) |
| | | ) |
| | PLAINTIFFS, | ) |
| | | ) |
| v. | | ) |
| | | ) |
| 54. | MICHELIN NORTH AMERICA, INC., | ) |
| 55. | B.F. GOODRICH COMPANY, n/k/a GOODRICH CORPORATION, and | ) ) |
| 56. | UNIROYAL GOODRICH TIRE COMPANY, | ) |
| | | |
| | DEFENDANTS. | |

I, Ronald Frehner, P.E., hereby declare:

1. I am more than 18 years old and competent to make this declaration.

2. I have personal knowledge of the facts set forth in this declaration.

3. I hold Bachelor and Masters degrees in Civil Engineering.

4. I am a licensed professional engineer in Oklahoma, as well as in Georgia, Idaho, Iowa, Illinois, Kansas, Minnesota, Missouri, New Jersey, North Dakota, Ohio, South Dakota, and Wisconsin. A copy of my Curriculum Vitae is attached hereto as Ex. A.

5. I am a Principal and Vice President of Conestoga-Rovers & Associates ("CRA").

6. CRA is a full-service engineering and consulting firm that provides a wide range of engineering and specialty services, including management of environmental remediation projects.

7. I have worked my entire 32-year professional career with CRA. During that time, I have worked extensively in the area of soil and groundwater remediation throughout North America. My areas of professional practice include: soil and groundwater investigation and remediation, soil vapor investigation and remediation, Superfund, RCRA and voluntary cleanup programs, UST removals, regulatory permitting, expert testimony, and brownfield development.

8. CRA currently manages the environmental project at the former BF Goodrich facility located at 1000 Goodrich Blvd., Miami, Oklahoma. This project includes the former BF Goodrich facility and certain residential lots south of the facility bounded by Goodrich Boulevard to the north, 11th Avenue to the south, and N Street NW to the east. This project involves the investigation of a groundwater plume of dissolved-phase mineral spirits containing benzene.

9. I have read the First Amended Petition filed by Plaintiffs Dennis Taylor, et al. ("First Am. Pet.") in the District Court of Ottawa County, Oklahoma, styled *Dennis Taylor, et al. v. Michelin North America, Inc., et al.*, No. 4:14-civil-00293-JED-TLW.

10. I understand from my review of the First Amended Petition that Plaintiffs allege that real property in Miami, Oklahoma, located south of Goodrich Blvd., north of W BJ Tunnell Blvd., and bounded on the west by P Street NW and on the east by H Street NW, is contaminated by benzene that migrated from the former BF Goodrich facility.

11. I understand from my review of the Petition that Plaintiffs seek remediation of property that they and others own which is south of Goodrich Blvd., north of W BJ Tunnell

Blvd., and bounded on the west by P Street NW and on the east by H Street NW in Miami, Oklahoma.

12. There are 330 lots (based on the tax assessor's website) located south of Goodrich Blvd., north of W BJ Tunnell Blvd., and bounded on the west by P Street NW and on the east by H Street NW in the City of Miami, Oklahoma.

13. The documents evidencing the nature, extent, and location of the groundwater plume are part of the public record. These documents provide the most up to date information about the extent and location of the groundwater plume.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 26 day of January, 2015 at Ramsey County, Minnesota

_____
Ronald Frehner, P.E.